1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No.  2:12-cr-00326-MCE-KJN

12              Respondent,

13        v.                                FINDINGS AND RECOMMENDATIONS

14   JOHN WINTON HARRIS,

15              Movant.

16

17

18        I.    Introduction

19        Movant is a federal prisoner, proceeding without counsel, with a motion to vacate, set aside or

20   correct his sentence pursuant to 28 U.S.C. § 2255.  Movant challenges his 2015 conviction for

21   possession with intent to distribute at least 28 grams of cocaine base (21 U.S.C. § 841(a)(1)).  He

22   is currently serving a sentence of 262 months.

23        In his motion, movant challenges his sentence, asserting the following:  (1) "Newly

24   discovered evidence in-part, Failure/lack of investigation in-part;" (2) ineffective assistance of

25   counsel – lack of investigation; (3) actual innocence – newly discovered evidence; (4) ineffective

26   assistance of trial and appellate counsel for failing to raise controlling Ninth Circuit case law;

27   (5) ineffective assistance of counsel for failing to subpoena witnesses, introduce evidence, and

28   adequately cross-examine a witness at the evidentiary hearing; (6) ineffective assistance of trial

1

and appellate counsel for failing to "point[] out and [recognize] that Government changed its

argument and position," to adequately challenge basis for seizure of the cocaine as evidence, and

to attack the credibility of law enforcement testimony; and (7) ineffective assistance of counsel

for a failure to assert petitioner's wife or ex-wife lied to ensure he "was the fall guy," and for

failing to object to the testimony of Brian Nehring as an expert concerning certain text messages,

or to retain a defense expert.  (ECF No. 193.)

II.      Brief Factual Background[1]

Responding to a 911 call by a third party concerning an incident of domestic violence,

Sacramento law enforcement officers responded to an apartment located at 1523 Los Robles

Boulevard, Apartment 23.  When an officer knocked on the door, a male occupant pulled aside

the blinds of an adjacent window and peeked out.  Both officers observed the male occupant and

waited for the door to be answered. When there was no response after waiting approximately 15

seconds, an officer knocked a second time.  The door was answered by a female occupant.  The

officers entered the apartment directly into the living room, where the female occupant remained.

The officers observed the male occupant to the left, in the kitchen.  The officers had heard "thud"

noises coming from the kitchen and observed the male occupant "crouched" down there.

Because the male occupant was anxious and angry, and was not following directions, he was

handcuffed and placed on the couch in the living room.  Thereafter, the male occupant tried to

flee the apartment but was stopped by the officers.

A search of the apartment revealed large quantities of cocaine base in the kitchen, as well as a

digital scale and other indicia of drug distribution.  Movant was identified as the male occupant in

the apartment, and a records-check revealed he was on probation and parole and subject to search

conditions.

Movant was subsequently charged with distributing cocaine base and was ultimately

convicted following a jury trial.

---

[1] Specific facts will be referenced and cited as necessary in the undersigned's discussion of the
issues presented.

III.     Relevant Procedural Background

In a September 13, 2012 indictment, movant was charged with knowingly and intentionally possessing with the intent to distribute at least 28 grams or more of a mixture or substance containing cocaine base in violation of 21 U.S.C. § 841(a)(1).  (ECF No. 5.)

Movant filed a motion to suppress evidence on April 3, 2014.  (ECF No. 45.)[2]  The Government opposed the motion (ECF No. 47) and movant replied thereto (ECF No. 48).  At a hearing held May 1, 2014, the court heard argument; thereafter, it ordered an evidentiary hearing.  (ECF No. 49.)  Following an evidentiary hearing held May 23, 2014, the court denied the motion to suppress evidence.  (ECF Nos. 57 & 59.)

Jury trial began July 21, 2014.  (ECF No. 96.)  On July 23, 2014, movant was found guilty.  (ECF Nos. 100, 103-04.)  The Presentence Investigation Report was filed December 24, 2014.  (ECF No. 112.)  Following receipt of objections, a reply, and movant's sentencing memorandum (ECF Nos. 113-15), sentencing proceedings were held January 15, 2015 (ECF No. 117).  On that date, movant was sentenced to a term of 262 months in federal prison.  (ECF Nos. 116-17, 127.)

Following an appeal, the Ninth Circuit Court of Appeals found the first of two searches of movant's wife's apartment to be unconstitutional; that court remanded the matter for a determination as to whether evidence obtained during the second search satisfied an exception to the fruit of the poisonous tree doctrine.  (ECF No. 129.)  At a status conference held May 19, 2016, the court denied a request for an evidentiary hearing and issued a briefing schedule.  (ECF Nos. 142 & 144.)  Movant filed a motion to suppress evidence on July 29, 2016 (ECF No. 149), the Government opposed the motion (ECF No. 154), and movant filed a reply (ECF No. 155) and supplemental reply (ECF No. 160).

At a status conference held December 15, 2016, an evidentiary hearing was scheduled for April 11, 2017. (ECF No. 161.)  Ultimately, the hearing was held March 31, 2017, and following testimony and argument, the district court denied the motion to suppress.  (ECF Nos. 184 & 188.)  A formal order denying the motion to suppress issued June 23, 2017.  (ECF No. 191.)  Movant

---

[2] Additional exhibits to the motion to suppress were filed on May 22 and 23, 2014.  (See ECF Nos. 53 & 55.)

1   filed a notice of appeal on July 20, 2017.  (ECF No. 192.)

2        On July 20, 2018, the Ninth Circuit Court of Appeals issued its memorandum, affirming the

3   district court's denial of movant's renewed motion to suppress.  (ECF No. 192.)

4        On August 27, 2018, movant filed the now-pending motion to vacate, set aside or correct

5   sentence under 28 U.S.C. § 2255.  (ECF No. 193.)  Additional exhibits were filed on September

6   26 and October 15, 2018.  (ECF Nos. 196 & 197.)  On November 6, 2018, the undersigned

7   directed the Government to file an answer to the motion.  (ECF No. 199.)

8        On January 9, 2019, the Government filed a motion for order waiving movant's attorney-

9   client privilege and permitting discovery by the Government.  (ECF No. 207.)  Movant filed an

10  opposition (ECF No. 210) and the Government replied thereto (ECF No. 211).

11       On January 29, 2019, the undersigned issued an order partially granting discovery, limited to

12  those issues raised in movant's motion to vacate, set aside, or correct sentence.  (ECF No. 215.)

13       The Government filed its opposition to movant's motion to vacate, set aside, or correct

14  sentence on March 7, 2019.  (ECF No. 220.)  On March 29, 2019, movant filed a traverse.  (ECF

15  No. 224.)

16       On September 9, 2019, the undersigned issued an order granting movant's motion to add

17  exhibits to his traverse (ECF No. 225), and further placing movant's subsequently filed

18  documents (ECF Nos. 229-239) in the court file, ordering them disregarded.  (ECF No. 240.)

19       On January 24, 2020, the Ninth Circuit Court of Appeals denied a petition for writ of

20  mandamus filed January 8, 2020.  (ECF No. 249.)

21       On March 16, 2020, movant filed a motion to amend the traverse (ECF No. 250) and on

22  March 30, 2020, a supplement to the traverse (ECF No. 251).  The motion to amend remains

23  pending and will be resolved herein.

24       Following an emergency motion for compassionate release filed by movant on July 27, 2020

25  (ECF No. 252), and opposition thereto by the Government (ECF No. 261), the district court

26  denied movant's emergency motion for compassionate release on September 14, 2020 (ECF No.

27  262).

28  //

4

On September 25, 2020, movant filed a document entitled "In relation to Traverse 'E' of 2255 Motion."  (ECF No. 267.)

The undersigned shall now address movant's pending motion to vacate, set aside, or correct sentence, and any appropriately related and pending motions.[3]

IV.    Legal Standard

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255, filed in the court that imposed sentence.  Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988).  Under § 2255, the federal sentencing court may grant relief if it concludes that the prisoner was sentenced in violation of the Constitution or laws of the United States.  United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999) (citing 28 U.S.C. § 2255).  Relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice …."  Davis v. United States, 417 U.S. 333, 346 (1974) (quoting Hill v. United States, 368 U.S. 424, 429 (1962)).

V.    Discussion

Because movant's numerous claims largely concern the assistance of counsel, the specific legal standards applicable to those claims are provided in advance of the particular analyses.

The Strickland Standard

The Sixth Amendment standard for analyzing an ineffective assistance of counsel claim is well established.  To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his trial counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

---

[3] All relevant filings and documents have been read and considered by the undersigned.  Failure to cite or identify a specific filing or document should not be interpreted to mean the filing or document was not reviewed or considered.

Under the first prong of the <u>Strickland</u> test, a petitioner must show that counsel's conduct failed to meet an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 687. There is "a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." <u>Harrington v. Richter</u>, 562 U.S. 86, 104 (2011) (quoting <u>Strickland</u>, 466 U.S. at 689). A petitioner must rebut this presumption by demonstrating that his counsel's performance was unreasonable under prevailing professional norms and was not the product of "sound trial strategy." <u>Strickland</u>, 466 U.S. at 688-89. Judicial scrutiny of defense counsel's performance is "highly deferential," and thus the court must evaluate counsel's conduct from his or her perspective at the time it occurred, without the benefit of hindsight. <u>Id.</u> at 689.

The second prong of the <u>Strickland</u> test requires a petitioner to show that counsel's conduct prejudiced him. <u>Strickland</u>, 466 U.S. at 691-92. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. A reasonable probability is one "'sufficient to undermine confidence in the outcome.'" <u>Summerlin v. Schriro</u>, 427 F.3d 623, 640 (9th Cir. 2005) (quoting <u>Strickland</u>, 466 U.S. at 694). "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between <u>Strickland's</u> prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" <u>Richter</u>, 562 U.S. at 112 (quoting <u>Strickland</u>, 466 U.S. at 693). "The likelihood of a different result must be substantial, not just conceivable." <u>Id.</u>

Additionally, a habeas claim alleging appellate counsel was ineffective is evaluated under <u>Strickland</u>. <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91 (2000).

### **Ground One: Newly Discovered Evidence/Ineffective Assistance of Counsel**

In his first claim for relief, movant contends counsel failed to adequately investigate "the fact that D-Boy aka Whitehurst was responsible for the drug" inside Evans' home, and that a "conviction" or "confession" from D-Boy would have "led to serious reasonable doubt" at trial. (ECF No. 193 at 4.) Movant further contends counsel failed to investigate cellphone records and text messages that would have "contradicted the Government's case and theory of events," with regard to his involvement with Evans. (<u>Id.</u>) Finally, movant contends counsel's failure to "object

6

1    or counter argue" Government exhibits depicting movant in Evans' apartment meant the jury did

2    not hear evidence that "could have raised serious reasonable doubt" as concerned his ties to

3    Evans' apartment, contradicting Evans' "lies" and the Government's theory at trial.  (Id.)  (See

4    also ECF No. 224.)

5     The Government maintains counsel did not perform deficiently, conducting a "robust

6    investigation" and making reasonable tactical decisions.  (ECF No. 220 at 10-14.)  It also argues

7    movant was not prejudiced by counsel's representation.  (ECF No. 220 at 14-16.)

8                      Investigation Re "D-Boy"[4]

9     An attorney's unreasonable failure to investigate and develop a viable defense, including a

10   defense of third party culpability, may constitute ineffective assistance of counsel.  See Avila v.

11   Galaza, 297 F.3d 911, 918 (9th Cir. 2002) ("It is well-established that 'counsel has a duty to make

12   reasonable investigations or to make a reasonable decision that makes particular investigations

13   unnecessary'" (quoting Strickland, 446 U.S. at 691)); see also Luna v. Cambra, 306 F.3d 954,

14   962-67, as amended at 311 F.3d 928 (9th Cir. 2002); Jones v. Wood, 114 F.3d 1002, 1010-11 (9th

15   Cir. 1997); Sanders v. Ratelle, 21 F.3d 1446, 1456-60 (9th Cir. 1994).  The merit of such a claim,

16   however, depends on a showing that specific additional evidence to support a defense could have

17   been obtained and presented and that the trial outcome would likely have been different had

18   counsel done so.

19    Here, the record reveals defense counsel was aware of D-Boy because he questioned Officer

20   Sabra about Evans' boyfriend during cross-examination (ECF No. 105 at 78) and defense witness

21   Vernon Jackson testified that he used to purchase crack cocaine from Evans or D-Boy at Evans'

22   apartment.  (ECF No. 105-1 at 50.)  Jackson testified on cross-examination that he never

23   purchased drugs from movant.  (ECF No. 105-1 at 59.)  On re-direct examination, Jackson again

24   testified he purchased cocaine from Evans and D-Boy, Evans' boyfriend.  (ECF No. 105-1 at 63-

25   65.)  During closing argument, defense counsel argued the evidence showed Evans' boyfriend

26   "D." was at the apartment, and it was undisputed that Vernon Jackson purchased drugs when D.

27

28   [4] "D-Boy" refers to an individual named Dealonie Whitehurst.

1    was present.  (ECF No. 124 at 19.)  Defense counsel further argued the drugs found in the

2    apartment belonged to Evans and D-Boy.  (ECF No. 124 at 21.)  In sum, the record establishes

3    that defense counsel did not fail to investigate D-Boy.

4        Defense counsel was not required to call D-Boy as a witness.  Strickland, 466 U.S. at 690.

5    "Once counsel reasonably selects a defense, it is not deficient performance to fail to pursue

6    alternative defenses."  Rios v. Rocha, 299 F.3d 796, 807 (9th Cir. 2002).  Significantly, movant's

7    reference to defense counsel perhaps obtaining a confession from D-Boy is complete speculation.

8    There is no evidence to indicate, now or then, that D-Boy would have confessed to the crime of

9    which movant was convicted.  Movant's case is unlike Sanders, where trial counsel failed to

10   investigate a third party who had confessed to the crime.  Sanders, 21 F.3d at 1456.  And,

11   certainly, defense counsel would have had no ability to control whether or not D-Boy could have

12   been convicted of this crime, or any crime.  Mere speculation or conclusory allegations are

13   insufficient.  See Jackson v. Calderon, 211 F.3d 1148, 1155 (9th Cir. 2000). Therefore, movant

14   cannot show that counsel's conduct concerning either his investigation into D-Boy, or any effort

15   to obtain a "conviction or confession" from D-Boy, was deficient.

16       There is no reasonable probability of a different outcome here.  Strickland, at 694.  Defense

17   counsel argued to the jury that D-Boy was the culpable party, yet the jury was not swayed.  There

18   is nothing to indicate in this record, or in the exhibits to movant's motion, that D-Boy would have

19   confessed on the stand or been convicted of this crime.

20                               Investigation Re Text Messages/Cell Phone

21       Movant makes the claim the counsel failed to "investigate cellphone records/text messages"

22   as those would have served to contradict the government's case and theory at trial because

23   movant did not stay at Evans' apartment "24-36 hours prior to" his arrest, and that evidence

24   would have established he was seeing another woman, "rais[ing] serious doubt to the jury about

25   [his] involvement with Evans" and connection to her apartment.  (ECF No. 193 at 4.)

26       The record belies movant's claim.  The defense challenged evidence gleaned from text

27   messages and a cell phone found during the search of Evans' apartment.  Specifically, the defense

28   asserted the evidence lacked foundation in its motions in limine; however, the court denied the

1    motion.  (See ECF No. 65 at 3-4; ECF No. 122 at 11, 18-19, 22-26; see also ECF No. 124 at 22

2    [during closing argument, defense counsel references "127 messages" downloaded from the

3    phone & argued "[o]ut of 197" text message the government showed "five or six"].)

4         A cellular forensics expert testified concerning the data extracted from the cell phone found in

5    Evans' apartment.  (ECF No. 105 at 98-115.)  Defense counsel elected not to conduct a cross-

6    examination.  (ECF No. 105 at 115.)  This was a tactical decision that aligns with the defense

7    strategy: to deny the cell phone belonged to movant and to suggest it belonged to Evans.  (ECF

8    No. 105-1 at 8 [defense counsel asking DEA fingerprint specialist about ability to test telephones

9    for fingerprints], 105-1 at 33 [no cross-examination of DEA Special Agent Nehring]; ECF No.

10   124 at 22 [in closing argument: "there's no proof that's actually his phone.  There's no testimony

11   that that phone belonged to" movant], 124 at 22-23 ["no evidence that the phone was in Mr.

12   Harris' name or that it was even proved it belonged to him.  Again, no fingerprints, no DNA from

13   that phone"].)  It was a reasonable strategy.  Strickland, 466 U.S. at 688.  And, in electing to

14   adopt a strategy that involved questioning the government's evidence that the cell phone

15   containing the text messages at issue during the trial lacked indication the phone even belonged to

16   movant, using the text messages as movant suggests would have been contradictory to defense

17   counsel's reasonable, chosen strategy.

18        The record indicates defense counsel investigated and was aware of the government's

19   evidence in the form of text messages retrieved from the cell phone found in Evans' apartment.

20   Defense counsel's strategy at trial served to challenge the government's evidence and theory at

21   trial.  Strickland, 466 U.S. at 688-89.  Movant's disagreement with counsel's strategy does not

22   amount to any deficiency by counsel, nor does it serve to show prejudice.  Reasonable tactical

23   decisions, including decisions regarding presentation of the case, are "virtually unchallengeable."

24   Strickland, 466 U.S. at 690.  Even assuming a deficiency, there is no reasonable probability of a

25   different result.  Strickland, at 694.

26                          Failure to Object or Counter Government Exhibits

27        Here, the record shows defense counsel objected to the text messages and selfies of movant

28   found on the cellphone on the basis of a lack of foundation.  (ECF No. 122 at 24-26.)  Further, the

9

1    defense put on witnesses to counter the evidence offered by the government concerning movant's

2    connection to Evans' apartment.  (ECF No. 105-1 at 35-38, 41-43.)

3        Movant cites counsel's failure to "point out to the jury" that a photograph depicting him

4    wearing certain red and blue clothing and wearing a "white watch," because those items were not

5    found in Evans' apartment three days later at the time of  his arrest "could have raised serious

6    reasonable doubt to the jury" about his ties to Evans' apartment, amounting to ineffective

7    assistance of counsel.  But whether to "point out" this specific alleged discrepancy to the jury is a

8    tactical decision by counsel.  Strickland, 466 U.S. at 688-89.  And, reasonable tactical decisions,

9    including decisions regarding presentation of the case, are "virtually unchallengeable."

10   Strickland, 466 U.S. at 690.

11       Defense counsel, in fact, countered or challenged the testimony that the men's clothing found

12   in Evans' apartment belonged to movant during cross-examination of both responding law

13   enforcement officers (ECF No. 105 at 64-65 & 77-78) and made the point in closing argument to

14   the jury (ECF No. 124 at 19).  This strategy comported with his opening statements that mere

15   presence at a crime scene is not enough to convict and that movant did not live at Evans'

16   apartment.  (ECF No. 122 at 163.)

17       There is no reasonable probability that even had the jury heard testimony that movant was

18   wearing certain clothing in a photograph taken three days before his arrest, and that because those

19   items of clothing were not found in Evans' apartment on the day of his arrest it was evidence

20   movant did not live in Evans' apartment, the outcome would have been different.  Strickland, 466

21   U.S. at 694.

22       The record establishes there was other evidence tending to indicate movant resided at Evans'

23   apartment, beyond the photographs depicting movant there.  For instance, in the same green

24   duffle bag from which police recovered photographs of Evans and movant, was an envelope

25   addressed to movant at Evans' address, to wit: 1523 Los Robles Boulevard, Apartment Number

26   23.  (ECF No. 122 at 96-98; but see ECF No. 124 at 19-20 [defense counsel argued the contents

27   of the green duffel bag as "leftovers"].)

28

1     In sum, movant's claim as alleged in ground one is merely criticism of defense counsel's

2     tactics or strategy, and therefore, does not support a claim of ineffective assistance of counsel.

3     Strickland, 466 U.S. at 688-89; Gustave v. United States, 627 F.2d 901, 904 (9th Cir. 1980).

4     There has been no showing of prejudice. Richter, 562 U.S. at 112. Therefore, the claim should be

5     denied.  The undersigned finds no "fundamental defect which inherently result[ed] in a complete

6     miscarriage of justice …."  Davis v. United States, 417 U.S. at 346.  Accordingly, the claim

7     should be denied.

8                    **Ground Two: Ineffective Assistance of Counsel**

9         Specifically in ground two, movant complains his attorney was ineffective as follows: (1) "for

10    not allowing" movant to testify where he could have discredited the government's theory that he

11    lived at Evans' home or why he was at Evans' home on the day of his arrest and three days prior;

12    (2) for failing to "follow up and object and point out that there was evidence in pictures that it

13    was other male shoes" depicted therein; and (3) for failing to object to Nehring's expert testimony

14    concerning the text messages.  (ECF No. 193 at 5.)

15                     Refusing to Permit Movant to Testify

16    "[I]t cannot be permissible trial strategy, regardless of the merits or otherwise, for counsel to

17    override the ultimate decision of a defendant to testify contrary to his advice."  United States v.

18    Mullins, 315 F.3d 449, 453 (9th Cir. 2002).  This conclusion is so because "a defendant in a

19    criminal case has the right to take the witness stand and testify in his or her own defense."  Rock

20    v. Arkansas, 483 U.S. 44, 49 (1987). The defendant may, however, waive this right, either

21    explicitly or implicitly.  See United States v. Pino-Noriega, 189 F.3d 1089, 1094 (9th Cir. 1999).

22    Such a waiver may be inferred from a defendant's failure to testify at trial or to notify the trial

23    court of his desire to testify.  Id. at 1094-095.  "Although the ultimate decision whether to testify

24    rests with the defendant, he is presumed to assent to his attorney's tactical decision not to testify,"

25    but he "can reject his attorney's tactical decision by insisting on testifying, speaking to the court,

26    or discharging his lawyer."  United States v. Joelson, 7 F.3d 174, 177 (9th Cir. 1993).  See United

27    States v. Nohara, 3 F.3d 1239, 1244 (9th Cir. 1993) (rejecting ineffective assistance of counsel

28    claim predicated upon counsel's waiver of petitioner's right to testify where defendant was silent

                                           11

1    in face of attorney's decision not to call him as a witness).

2       Significantly, a review of this record reveals no indication whatsoever that defense counsel

3    did not permit movant to testify at trial.  In fact, the record before this court establishes that on the

4    morning of the first day of trial defense counsel was seeking to prepare movant to testify and that

5    movant was refusing to meet with counsel.  (See ECF No. 126 [9 pages; sealed].)  Additionally,

6    the record gives a reason for counsel to recommend against his client testifying at trial.

7    Specifically, outside the jury's presence and before the government's case-in-chief was to resume

8    with the continued direct examination of Officer Canepa, movant testified at a hearing concerning

9    the events of July 16, 2012, wherein he was questioned by DEA Agent Nehring.  (ECF No. 105 at

10   3-13 [direct examination], 13-24 [cross-examination].)  At the conclusion of the hearing, the

11   district judge stated, in pertinent part, "in probably 16 years as a judge, I've never seen a situation

12   where I found a defendant more incredible as far as their position and how they respond on the

13   witness stand."  (ECF No. 105 at 43.)

14      In any event, movant was silent on the issue of his right to testify and implicitly waived that

15   right.  United States v. Pinto-Noriega, 189 F.3d at 1094; United States v. Joelson, 7 F.3d at 177;

16   United States v. Nohara, 3 F.3d at 1244.

17      Further, defense witness testimony addressed movant's living arrangements.  Specifically,

18   Angela Slaughter and Bernetta Jackson both testified that movant did not live at Evans'

19   apartment, that he had been living at his mother's home, and then had rented an apartment of his

20   own.  (ECF No. 105-1 at 35-44.)   Again, reasonable tactical decisions, including decisions

21   regarding presentation of the case, are "virtually unchallengeable."  Strickland, 466 U.S. at 690.

22      In sum, there is nothing in this record to indicate defense counsel refused to permit movant to

23   testify at trial.  Nor can movant establish prejudice as there is no reasonable probability of a

24   different result had he testified.  Strickland, 466 U.S. at 694.

25                     The Men's Shoes

26      On direct examination, Officer Canepa testified that three pairs of men's shoes in a size eight

27   were observed in the southwest bedroom of Evan's apartment.  (ECF No. 122-1 at 77.)  The size

28   was significant, Canepa testified, because later that evening it was determined that movant wore a

1   size eight shoe.  (ECF No. 122-1 at 77.)  Defense counsel questioned the officer on cross-

2   examination about his failure to collect the men's shoes depicted in the photograph as evidence.

3   (ECF No. 150 at 65.)  Counsel's question was consistent with the defense strategy that the

4   investigation was deficient for its failure to collect evidence that should have been subjected to

5   DNA testing.  Strickland, 466 U.S. at 690.

6       In any event, pointing out an alleged discrepancy in the form of "Air Jordans in plain view

7   by the door" in Evans' apartment would not have added anything significant to the strategy or

8   tactic employed by counsel.  As noted elsewhere in these findings, other defense evidence served

9   to contradict any assertion by the government that movant lived in Evans' home.  (ECF No. 105-1

10  at 35-44, 51 [Vernon Jackson testified when he observed movant at Evans' apartment complex,

11  movant was "dropping off his daughter or he was picking up her son"].)  Defense counsel argued

12  to the jury this evidence was lacking in several ways.  (See, e.g., ECF No. 124 at 18-20

13  [addressing clothing, shoes, lack of toiletries and prescription medications, etc.].)

14      This claim too amounts to movant's mere criticism of defense counsel's strategy, and does not

15  establish a claim of ineffective assistance of counsel.  Gustave, 627 F.2d at 904.  There is no

16  reasonable probability of a different outcome even had the jury heard evidence of another pair of

17  men's shoes that allegedly did not belong to movant being present in Evans' apartment.

18  Strickland, 466 U.S. at 694.

19                          Nehring Testimony

20      Movant complains defense counsel should have objected to DEA Special Agent Nehring's

21  designation as an expert witness, citing prejudice because the jury was "tainted" by Nehring's

22  testimony about text messages where those messages made no reference to "crack cocaine

23  sales."[5]

24      Nehring testified on the second day of trial.  After testifying he had been an agent since 1991,

25  and briefly explaining the duties of the position (ECF No. 105-1 at 9-10), Nehring specifically

26  _____

27  [5] During trial, defense counsel expressly argued there was no evidence to prove the phone
    recovered during the search of Evans' apartment belonged to movant.  In movant's motion, he
    complains counsel was ineffective for failing to object to Nehring's expert testimony about
28  "the text messages in my phone …."  (ECF No. 193 at 5.)

                          13

1    testified concerning his investigation of this matter and his interviews with movant.  (ECF No.

2    105-1 at 10-13.)  Nehring testified movant advised him that he had been "middlemanning drug

3    deals for cocaine, cocaine base, and MDMA" since 2009.  (ECF No. 105-1 at 13-14.)  The

4    government then indicated to the court that the aforementioned testimony was the end of the

5    agent's testimony as a percipient witness and that it intended to question Nehring in order to

6    qualify him as an expert witness; defense counsel did not object.  (ECF No. 150-1 at 15-16.)

7    Briefly stated, Nehring testified he had been a special agent for more than thirty years, estimated

8    he had been involved in between 400 to 500 cases in that period, at least 100 of which would

9    have involved cocaine base.  (ECF No. 150-1 at 16-17.)  Nehring was familiar with the common

10   terminology, packaging and distribution of cocaine base, and had arrested over 100 people for the

11   offense.  (ECF No. 150-1 at 17-18.)  The agent further had experience as an undercover agent,

12   buying the drug in that capacity, and had undergone training regarding the distribution of cocaine

13   base.  (ECF No. 150-1 at 17-18.)  Defense counsel did not elect to voir dire Nehring.  When the

14   government moved to qualify Nehring as an expert, defense counsel had no objection.  (ECF No.

15   150-1 at 18.)  The court deemed Nehring an expert in the distribution of cocaine base.  (ECF No.

16   150-1 at 18.)

17        Thereafter, Nehring testified about quantities for personal use versus sales, packaging in

18   sandwich bags, and the use of a digital scale.  (ECF No. 150-1 at 19-24.)  Nehring also testified as

19   to quantities sold, the currency used to purchase the drug, and the language associated with those

20   quantities.  (ECF No. 150-1 at 24-27.)  After identifying a number of the photographs of evidence

21   taken on the date of movant's arrest (ECF No. 150-1 at 27-29), Nehring testified about text

22   messages recovered from the Samsung phone found in Evans' apartment and specifically about

23   language associated with the distribution of cocaine base.  (ECF No. 150-1 at 30-33.)

24        In light of Nehring's extensive experience, there was no basis upon which defense counsel

25   could have reasonably objected to Nehring's qualification as an expert on the distribution of

26   cocaine base.  See Boyer v. Chappell, 793 F.3d 1092, 1106 (9th Cir. 2015); Juan H. v. Allen, 408

27   F.3d 1262, 1273 (9th Cir. 2005) ("trial counsel cannot have been ineffective for failing to raise a

28   meritless objection"); James v. Borg, 24 F.3d 20, 27 (9th Cir.1994) (holding that counsel does not

1   provide ineffective assistance by failing to make futile objections); <u>Boag v. Raines</u>, 769 F.2d

2   1341, 1344 (9th Cir. 1985) (failure to raise a meritless argument does not constitute ineffective

3   assistance of counsel).

4       Significantly too, had defense counsel objected to Nehring's testimony concerning the

5   meaning of the language used in the text messages found on the Samsung phone, such an

6   objection would have been incompatible with the defense strategy to argue there was no evidence

7   the phone actually belonged to movant.  Because such a move would have been incompatible

8   with the defense strategy employed by defense counsel, counsel's purported failure to challenge

9   either Nehring's status as an expert witness or the specific testimony about the language

10  employed in the text messages was not deficient.  <u>Strickland</u>, 466 U.S. at 690.  Moreover, given

11  Nehring's testimony that movant stated he was "middlemanning" cocaine, cocaine base and

12  MDMA, it is not reasonably probable that even had defense counsel successfully objected to

13  Nehring's subsequent qualification as an expert and testimony regarding the content of the text

14  messages, a more favorable result would have occurred.  <u>Id.</u> at 694.

15      As for movant's claim asserted in ground two of his motion, the undersigned finds no

16  "fundamental defect which inherently result[ed] in a complete miscarriage of justice …."  <u>Davis</u>

17  <u>v. United States</u>, 417 U.S. at 346.  Thus, the claim should be denied.

18              **Ground Three: Actual Innocence-Newly Discovered Evidence**

19      In his third ground for relief, movant claims he has repeatedly asserted he "was not

20  responsible nor did [he] reside in Evans apartment," he contends he was in the wrong place at the

21  wrong time, and that D-Boy was on his way to pick up his property and the cocaine.  Movant

22  contends D-Boy has provided him "with a[] signed and stamped and notarized letter admitting his

23  guilt" and proclaiming movant's innocence.  He argues an evidentiary hearing must be held to

24  hear "exactly what this guy has to say," noting that information is "corroborated by Vernon

25  Jackson's testimony and "exhibit 'P'."  (ECF No. 193 at 6.)  The government responds the

26  declaration is not reliable and should not be credited by this court, and that even assuming

27  reliability, the declaration offers no actual admission of guilt, nor does it explain the basis for the

28  declarant's purported knowledge.  (ECF No. 220 at 18-20.)

1

2                        <u>Legal Standards Applicable to the Claim</u>

3          The United States Supreme Court has, on several occasions, assumed, without expressly

4   deciding, that a "freestanding" claim of actual innocence is cognizable on federal habeas review.

5   <u>See</u> <u>House v. Bell</u>, 547 U.S. 518, 554-55 (2006); <u>Herrera v. Collins</u>, 506 U.S. 390, 417 (1993).

6   The Ninth Circuit has also assumed that freestanding actual innocence claims are cognizable on

7   collateral attack. <u>See e.g.</u>, <u>United States v. Berry</u>, 624 F.3d 1031, 1038 n. 5 (9th Cir. 2010) ( "This

8   circuit recognizes a claim of actual innocence that is cognizable under § 2255"); <u>Carriger v.</u>

9   <u>Stewart</u>, 132 F.3d 463, 476-77 (9th Cir. 1997) (en banc).  However, the standard for establishing

10  that one is entitled to relief on such a freestanding actual innocence claim is "'extraordinarily

11  high.'"  <u>Carriger</u>, 132 F.3d at 476 (quoting <u>Herrera</u>, 506 U.S. at 417).  In order to prevail, a

12  petitioner "must go beyond demonstrating doubt about his guilt, and must affirmatively prove that

13  he is probably innocent."  <u>Id.</u>  <u>See also</u> <u>Cooper v. Brown</u>, 510 F.3d 870, 923 (9th Cir. 2007)

14  ("Under these standards, a petitioner must affirmatively prove that he is probably innocent");

15  <u>Boyde v. Brown</u>, 404 F.3d 1159, 1168 (9th Cir. 2005) (same).

16                        <u>Declaration dated August 10, 2018</u>

17         Attached as Exhibit A to movant's filing is the Declaration of "Delonie Whitehurst."  (ECF

18  No. 193, Ex. A.)  The declaration is signed "under penalty of perjury pursuant to 28 U.S.C. 1746

19  foregoing to be true and correct" and is accompanied by a completed all-purpose

20  acknowledgement by California notary Daniel Paul Reynolds.  (<u>Ibid.</u>)  In its opposition, the

21  government appended a redacted version of an image record from the California Department of

22  Motor Vehicles wherein the spelling of Whitehurst's first name is "DEALONIE" rather than the

23  "Delonie" appearing in movant's exhibit.[6]  (ECF No. 222 [Notice of Errata].)

24         As for the content of the declaration, its entirety is recounted here without correction or

25  modification:

26              1.  My name is Delonie Whitehurst.

27  _____

28  [6] The undersigned notes that in the declaration of Melvin M. Buford, Buford also employs the
    spelling "Dealonie" when referring to Whitehurst.  (<u>See</u> ECF No. 225.)

2. I have both personal and first hand knowledge of the factual statements madde herein and am competent to make those factual statements.

3. In the summer of 2012 and around the month or June or July, John Harris was arrested and charged for poss w/intent cocaine a charge John Harris was later wrongfully convicted of.

4. I am a witness and have first hand knowledge on who put the cocaine inside of Fornisha home and more importantly who the cocaine belongs too, along with who's responsible and it's without a doubt that it wasn't all John Harris's.

5. I would like to step forward and accept accountability for my own actions and roll.  Furthermore, I'm making this declaration under my own free will and direction.  I am not being threatened or forced to do so.

(ECF No. 193, Ex. A.)

Setting aside the first paragraph, which itself is potentially unreliable given the spelling discrepancy noted above, the remainder of the declaration does not serve to establish movant is actually innocent or probably innocent.

To begin, it is curious how Whiteside would have "personal and first hand knowledge" of movant's arrest.  The record is clear that other than law enforcement personnel, the only persons present during movant's arrest were he and his wife.  (ECF . 122-1 at 95.)  Whiteside's claim of personal knowledge as to movant's arrest is unreliable.  Nor is it clear how Whiteside would have "personal and first hand knowledge" of the crime with which movant was charged; obviously the responsibility of charging the crime falls to the government and its agents, meaning, of course, that Whiteside cannot have any such personal knowledge.  In the fourth paragraph, Whiteside claims to be a "witness" and to have "first hand knowledge" of "who put the cocaine inside" Evans' apartment.  Even assuming that is true, Whiteside fails to identify "who the cocaine belongs" to, other than to state it did not "all" belong to movant.  Finally, Whiteside declares he "would like to step forward" to "accept" his "accountability" and role.  The declaration lacks any indication as to what role Whiteside may be willing to accept or be held accountable for.  Certainly the declaration does not make any claim of ownership to, or even express personal responsibility for, the cocaine found in Evans' apartment.  The declaration does not come close to meeting the "extraordinarily high" standard movant must overcome.  Carriger, 132 F.3d at 476.

17

1    Nor is there any explanation for Whiteside's delay following his  purported "personal" and "first

2    hand knowledge" of movant having been wrongfully convicted – a period of approximately four

3    years.  Herrera v. Collins, 506 U.S. at 423 (O'Connor, J., concurring) (affidavits made many years

4    after trial, purporting to exculpate a convicted prisoner through a new version of events, are ''not

5    uncommon'' and ''are to be treated with a fair degree of skepticism'').  Given the foregoing, the

6    reliability of the Whiteside declaration is plainly suspect.

7        Separate from the Whiteside declaration, but asserted as a part of ground three, movant alleges

8    that Melvin Buford and Joyce Hammonds should have testified at trial as they had "evidence in

9    [the] case such as lease agreement, clothes, shoes, bills, C.D.L. wallet," speaking to the issue of

10   movant not residing at Evans' apartment.  But, as noted elsewhere in these findings, the

11   government's evidence of this issue was challenged.  Angela Slaughter and Bernetta Jackson

12   testified as to movant not living with Evans, as did Vernon Jackson.  The officers' testimony

13   concerning the men's clothing and shoes found in the apartment was also challenged by way of

14   defense counsel's cross-examination on those issues.  Simply put, any additional testimony would

15   have been cumulative.  Bobby v. Van Hook, 558 U.S. 4, 11-12 (2009) ("defense counsel's

16   'decision not to seek more' mitigating evidence...'than was already in hand' fell 'well within the

17   range of professionally reasonable judgments'").  Further, it is defense counsel's decision

18   whether a particular witness is to be called to testify.  Strickland, 466 U.S. at 690.  The record

19   establishes that defense counsel was considering calling Buford at one point (ECF No. 105-1 at

20   46), but apparently elected not to do so.  Again, that is counsel's tactical decision to make.

21   Sanders v. Ratelle, 21 F.3d at 1456; United States v. Wadsworth, 830 F.2d 1500, 1509 (9th Cir.

22   1987) (trial tactics are clearly within the realm of powers committed to the discretion of defense

23   counsel).

24       In sum, the undersigned finds that movant has failed to make a "truly persuasive

25   demonstration" that he is innocent with respect to the offense.  Herrera, 506 U.S. at 417.  The

26   Whiteside declaration does not come close to demonstrating doubt about movant's guilt, nor does

27   it affirmatively prove his probable innocence.  Carriger v. Stewart, 132 F.3d at 476; Cooper v.

28   Brown, 510 F.3d at 923; Boyde v. Brown, 404 F.3d at 1168.  Nor was trial counsel ineffective for

1   failing to call Melvin Buford or Joyce Hammonds as witnesses at trial.  Strickland, 466 U.S. at

2   690.  There was no "fundamental defect which inherently result[ed] in a complete miscarriage of

3   justice …."  Davis, 476 U.S. at 346.  Thus, the undersigned recommends the claim be denied.

**Ground Four: Ineffective Assistance of Counsel**

5       Here, movant contends trial and appellate counsel were ineffective for (1) failing to "raise and

6   cite controlling" Ninth Circuit precedent as concerns warrantless searches, citing to the "May 23

7   hearing & March 13, 2017 hearing;" (2) failing to raise or "bring[] to light to the jury" the fact

8   Evans was not arrested; and (3) failing to call his brother and Agent Richardson to testify on his

9   behalf to corroborate the fact he did not reside in Evans' apartment.  (ECF No. 193 at 8.)

Argument re Warrantless Search

11      The law of the case doctrine generally precludes a court from reconsidering an issue that has

12   been previously decided by the same court, or a higher court in the same case.  United States v.

13   Alexander, 106 F.3d 874, 877 (9th Cir. 1997).  For the doctrine to apply, the issue in question

14   must have been decided either explicitly or by necessary implication in the prior disposition.

15   Thomas v. Bible, 983 F.2d 152, 154 (9th Cir.), cert. denied, 508 U.S. 951 (1993).  The doctrine is

16   not a limitation on the court's power, but a guide to discretion.  Arizona v. California, 460 U.S.

17   605, 618 (1983).[7]

18      The Supreme Court has recognized that the law of the case doctrine typically applies in the §

19   2255 context, as do its exceptions.  See Davis, 417 U.S. at 342 (assuming doctrine applies, and

20   considering exception for an intervening change in law).  The Ninth Circuit has clearly stated that

21   the doctrine applies in § 2255 cases and precludes relitigation of issues previously decided.

22   United States v. Jingles, 702 F.3d 494, 498 (9th Cir. 2012), cert. denied, 568 U.S. 1257 (2013).

23      Here, the Ninth Circuit Ninth Circuit established as the law of this case that the inevitable

24   discovery doctrine was a valid exception to the otherwise unconstitutional search of Evans'

---

26   [7] The law of the case doctrine has three exceptions that may permit departure from the law of the
    case when: (1) the original decision is clearly erroneous and its enforcement would work a
27   manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3)
    substantially different evidence was adduced at a subsequent trial.  Old Person v. Brown, 312
28   F.3d 1036, 1039 (9th Cir. 2002).  None of the exceptions apply here.

1   apartment and the seizure of the cocaine base.  (ECF No. 192.)  This court is bound by the

2   decision of the Court of Appeals in this regard.  See Thomas v. Bible, 983 F.2d  at 154.  Because

3   any claim of ineffective assistance of counsel related to the search and seizure would require a

4   finding that the search was unconstitutional (something already determined otherwise), the Ninth

5   Circuit's decision also precludes the related claims of ineffective assistance of counsel.  Thus, this

6   court is precluded by the law of the case from considering movant's claims for relief on this basis.

7                           Fact Evans Was Not Arrested

8       Movant contends that because he did not reside in Evans' home, he is not "responsible for

9   whats inside," and therefore defense counsel was ineffective for failing to raise the issue before

10   the jury or ask the arresting officers why Evans was not arrested.  (ECF No. 193 at 8.)

11       Whether or not Evans was arrested is irrelevant.  While Evans and movant were both present

12   in the apartment when the cocaine base was discovered, even had defense counsel successfully

13   presented evidence that Evans was not arrested, the outcome of the proceedings would not have

14   been different.  It is not reasonably probable in light of the evidence, and in particular, the

15   testimony of Agent Nehring wherein movant advised Nehring that he was "middlemanning"

16   controlled substances, including cocaine base, that the jury would have found movant not guilty

17   had it considered evidence that Evans was not arrested.

18       Defense counsel argued that Evans and D-Boy were the true responsible parties, but the jury

19   was not persuaded.  Movant's own actions reasonably support the jury's finding of guilty.

20   Movant looked out the window, saw the officers, and did not open to the door in response to their

21   knock.  When the officers gained entry after Evans opened the door in response to their second

22   attempt to make contact, movant was crouching down in the kitchen area, was agitated and

23   hesitant to follow the orders given by the officers.  Once movant was handcuffed, he attempted an

24   escape of the apartment.  Movant refused to give his full name.  He instructed Evans to tell the

25   officers they had to leave the apartment.  Significantly, in a later interview with DEA Agent

26   Nehring, asked whether or not he had any experience or involvement in the distribution of

27   cocaine, movant stated that "since 2009, over the last three years leading up to that point, that he

28   had been repeatedly been involved in middlemanning drug deals for cocaine, cocaine base and

1   MDMA."  (ECF No. 105-1 at 13.)  Even assuming counsel were deficient as alleged by movant,

2   there is no reasonable probability of a different outcome.  Strickland, 466 U.S. at 694.  Hence,

3   movant cannot establish prejudice.

4   Testimony of Movant's Brother & Agent Richardson

5     Movant alleges defense counsel was ineffective for failing to call his brother and Agent

6   Richardson as witnesses to testify that movant "was not a resident" at Evans' apartment.

7   However, as noted elsewhere in these findings, such evidence would merely be cumulative of the

8   defense evidence offered through the testimony of Angela Slaughter, Bernetta Jackson and

9   Vernon Jackson.  Bobby v. Van Hook, 558 U.S. at 11-12.  Additionally, movant's brother's

10  testimony would have been "suspect based on [his] close relationship with" movant.  See, e.g.,

11  Gonzalez v. Wong, 667 F.3d 965, 988 (9th Cir. 2011) (holding that trial counsel's failure to

12  present character witnesses who were family members or close friends did not constitute

13  ineffective assistance).

14    Movant also contends defense counsel was ineffective for failing to call Agent Richardson to

15  testify regarding "parole procedures when doing the search of 3-party home."  The search of

16  Evans' home was determined to be constitutional by the Ninth Circuit Court of Appeals, as noted

17  above; therefore, any testimony Richardson may have offered would not have been helpful to

18  movant as the issue had already been decided against him.  And again, as to the issue of whether

19  movant resided in Evans' apartment, Richardson's testimony would have been cumulative.

20  Bobby v. Van Hook, 558 U.S. at 11-12.

21    In short, there was no "fundamental defect which inherently result[ed] in a complete

22  miscarriage of justice …."  Davis, 476 U.S. at 346.  Thus, the undersigned recommends movant's

23  claim as asserted in Ground Four be denied.

24  **Ground Five: Ineffective Assistance of Counsel**

25    In ground five, movant contends his trial counsel was ineffective for the following reasons:

26  (1) failing to subpoena witnesses to corroborate he "had children and other responsibility" at the

27  time of his arrest, and for failing to adequately examine Angela Slaughter and his mother; (2)

28  failing to introduce evidence gathered by Melvin Buford and Joyce Hammonds, "such as lease

21

1    agreement phone evidence" to show movant was "involved with other women" and that Evans

2    was "involved with another man" to corroborate movant's "theory of events;" and that (3) trial

3    and appellate counsel were ineffective for failing to "point out" that Evans testified at an

4    evidentiary hearing in 2014 that movant had his own apartment.  (ECF No. 193 at 9.)

5                          Subpoenas & Adequacy of Cross-Examination

6        Without identifying what witnesses defense counsel should have subpoenaed to testify at trial,

7    movant claims those witnesses could have corroborated and proven that he "had children and

8    other" responsibilities at the time of his arrest.  However, an attorney is not required to present

9    trial testimony from every witness suggested by defendant.  United States v. Wadsworth, 830

10   F.2d at 1509 (trial tactics are clearly within the realm of powers committed to the discretion of

11   defense counsel).  Moreover, whether movant had children and other responsibilities at the time

12   of his arrest would not have foreclosed the jury's finding of guilt even had that information been

13   presented.  There is no reasonable probability of a different outcome given the evidence presented

14   at trial: movant told Agent Nehring he had been "middlemanning" cocaine base; he was in Evans'

15   apartment when law enforcement officers arrived to investigate a report of domestic violence;

16   movant was aware of the officers' presence after looking out a window but did not open the door

17   in response to an officer's knock; after Evans opened the door for officers, movant was observed

18   in the kitchen, was agitated and refusing to follow the officers' instructions, and attempted to

19   escape the apartment while handcuffed.  Movant has failed to establish prejudice.  Strickland, 466

20   U.S. at 693-94.

21       Movant complains defense counsel failed to adequately examine defense witnesses Angela

22   Slaughter and Bernetta Jackson on the issue of his residency.  The record establishes otherwise.

23   Slaughter testified she was in a romantic relationship with movant and they shared a child

24   together.  (ECF No. 105-1 at 35.)  Slaughter saw movant every day, visiting him at either his

25   mother's home where he originally stayed, or at his apartment on El Camino.  (ECF No. 105-1 at

26   36-37, 39-40.)  Jackson, movant's mother, testified that movant was living with her around the

27   time of his arrest and got an apartment immediately prior to his arrest on El Camino.  (ECF No.

28   105-1 at 41-43.)  Reasonable tactical decisions, including decisions with regard to the

1    presentation of the case, are "virtually unchallengeable." Strickland, 466 U.S. at 687-90; United

2    States v. Nersesian, 824 F.2d 1294, 1321 (2nd Cir. 1987) ("[t]he decision whether to call any

3    witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the

4    sort engaged in by defense attorneys in almost every trial").

                                    Buford & Hammonds Evidence

6        This issue has already been addressed. See discussion in Ground Three, ante.

                                  Evans' Testimony at Evidentiary Hearing

8        Movant next claims defense counsel was ineffective for failing to point out the fact that Evans

9    testified at the evidentiary hearing in 2014 that movant had his own apartment, something she did

10   not tell officers at the time of movant's arrest, and that appellate counsel was ineffective for

11   failing to raise the issue on appeal. (ECF No. 193 at 9.)

12       Evans did not testify at trial; she asserted the marital privilege and was therefore an

13   unavailable witness. (ECF No. 122 at 4-10.) See United States v. Marchini, 797 F.2d 759, 764-

14   65 (9th Cir. 1986) (declarant unavailable when she invoked marital privilege), cert. denied, 479

15   U.S. 1085 (1987). Movant fails to explain what defense counsel should have done in an effort to

16   present Evans' 2014 evidentiary hearing testimony at trial.

17       Given the district court's ruling concerning the expected testimony of defense investigator

18   Buford regarding Evans' statements to him following movant's arrest pursuant to Rule 804(b)(3)

19   - statements against interest - (see ECF No. 122 at 26-27, 140-48 [trustworthiness at issue]), there

20   is no guarantee that evidence would have been admissible at trial. Admission of such testimony

21   is within the court's discretion. See, e.g., United States. v. Avants, 367 F.3d 433 (5th Cir. 2004).

22       And, even assuming Evans' former testimony was admissible pursuant to Rule 804(b)(1) of

23   the Federal Rules of Evidence, trial counsel was not ineffective for electing not call Buford to

24   testify in that regard. A review of Fornisha Evans' testimony at the evidentiary hearing in May of

25   2014 does reveal that Evans testified movant had his own apartment. (ECF No. 59 at 90.)

26   However, that statement does not reflect the entirety of Evans' testimony on the subject.

27       A careful and thorough review of the hearing transcript reveals that Evans testified that while

28   she and movant were separated for the period between late February or early March 2012, they

                                                    23

1  reconciled in June of that year.  (ECF No. 59 at 89.)  As of June, the two were "back and forth

2  between his place and" hers.  (ECF No. 59 at 90.)  Further, Evans acknowledged on cross-

3  examination that she told one of the responding officers, at the time of movant's arrest, that

4  movant had stayed every night of the previous two weeks at the apartment.  (ECF No. 59 at 111.)

5  Notably too, Evans' other testimony would have been potentially detrimental or damaging to

6  movant's case.  (See ECF No. 59 at 94-95 [movant telling Evans to tell the officers to leave], 96

7  [movant trying to run], 99 [Evans denied knowing about cash in her room], 104-11 [Evans

8  testified as to domestic violence incident; not first incident].)

9      Defense counsel's failure to offer Evans' former testimony from the May 2014 evidentiary

10  hearing does not amount to deficient performance.  Further, he record reveals it was a matter of

11  tactic or strategy, when defense counsel advised the court during the defense case that he did not

12  believe he would call defense investigator Buford to the stand.  (ECF No. 105-1 at 46.)  That was

13  a reasonable strategy given the circumstances.  Strickland, 466 U.S. at 688-689.  And, movant

14  cannot establish prejudice where, as noted elsewhere in these findings, there is no reasonable

15  probability of a different result given the other evidence adduced at trial.  Strickland, at 694.

16  There was no "fundamental defect which inherently result[ed] in a complete miscarriage of

17  justice …."  Davis, 476 U.S. at 346.  Thus, the undersigned recommends the claim asserted in

18  Ground Five be denied.

19              **Ground Six: Ineffective Assistance of Counsel**

20      In ground six, movant contends (1) trial and appellate counsel were ineffective for "not

21  pointing out and recognizing" the government had changed "argument & position prior to remand

22  and after," and cannot do so; (2) "government didn't prove that the evidence would have

23  ultimately been discovered;" and (3) counsel failed to attack an officer's testimony as inconsistent

24  with the evidence.  (ECF No. 193 at 11.)

25              Changed Argument or Position

26      Movant claims trial and appellate counsel were ineffective for "not pointing out and

27  recognizing that Government changed its argument and position prior to remand and after."

28      "A change in the government's theory late in the case might constitute prejudicial variance

1   [citation] or a constructive amendment [citation].  A critical consideration is whether the

2   introduction of the new theory changes the offense charged [citations] or so alters the case that

3   the defendant has not had a fair opportunity to defend [citations]." Lincoln v. Sunn, 807 F.2d

4   805, 813 (9th Cir. 1987).

5       Here, there was little change to the government's theory.  The September 13, 2012 indictment

6   alleged a single count of possession with intent to distribute cocaine base.  (ECF No. 5.)

7   Following the filing of a motion to suppress and related briefing, and the May 23, 2014

8   evidentiary hearing (ECF Nos. 45, 47-48, 53, 55, 57, 59), the district court judge denied the

9   motion to suppress and the matter was set for trial.  Movant was convicted of the single count on

10  July 23, 2014, following jury trial.  (ECF No. 104.)  Movant was sentenced on January 15, 2015.

11  (ECF No. 116-17.)  Following an appeal (ECF Nos. 118-19), the Ninth Circuit Court of Appeals

12  remanded the matter for further proceedings on March 11, 2016 (ECF No. 129).  The higher court

13  held, as to the remand:

14          Applying the attenuated basis and inevitable discovery doctrines to
    this case, the district court should consider whether the police would

15          have interviewed Harris and his wife following the 911 call about the
    underlying domestic violence incident, thus learning the same

16          information concerning Harris' parole status and place of residence.
    The district court should also determine whether the police would

17          have conducted a sweep or search of the apartment after learning that
    Harris' residence was subject to warrantless searches, even if they

18          had not discovered the cocaine in the kitchen. The district court
    should make these determinations following an evidentiary hearing.

19          See, e.g., United States v. Duran-Orozco, 192 F.3d 1277, 1281 (9th
    Cir. 1999) (remanding the case to the district court for an evidentiary

20          hearing to determine whether information police obtained during
    their first unconstitutional search tainted evidence obtained during

21          the subsequent search under the fruit of the poisonous tree doctrine).

22  (ECF No. 129 at 9-10.)  Remand proceedings followed, including briefing by the parties (ECF

23  Nos. 149, 154-55, 160) and an evidentiary hearing held March 31, 2017 (ECF No. 184).  Just

24  prior to the evidentiary hearing of March 31, the government filed a Motion for Order Defining

25  Scope of Issues to be Heard at Evidentiary Hearing.  (ECF No. 180.)  That motion argued the

26  Ninth Circuit's remand order required the court to "answer two – and only two – factual discrete

27  questions: (1) whether the police would have interviewed Harris and his wife, Fornisha Evans,

28  following the 911 call about the underlying domestic violence incident, and therefore learned the

1   same information regarding Harris' parole status and residence; and (2) whether the police would

2   have then conducted a sweep or search of the apartment after learning that Harris' residence was

3   subject to a warrantless search, even if they had not discovered the cocaine in the kitchen."  (ECF

4   No. 180 at 1-2.)  The district court granted the government's motion at the time of the March 31,

5   2017, evidentiary hearing.  (ECF No. 184 [minutes reflecting motion granted].)

6       Given the remand by the Ninth Circuit Court of Appeals, the government was not required to

7   maintain "its argument and position" as before.  The Ninth Circuit's memorandum opinion

8   expressly noted the basis for remand, and any objection asserting a change in the government's

9   theory of the case would have been futile.  Neither trial nor appellate counsel is required to make

10   futile objections or frivolous arguments.  Strickland, 466 U.S. at 693-94; Jones v. Smith, 231 F.3d

11   1227, 1239 n. 8 (9th Cir. 2000) (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)); see

12   also Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can

13   never be deficient performance").  In any event, even assuming the parameters of the remand

14   could be said to be a change in the government's theory of the case, movant had a fair opportunity

15   to defend against any alleged change.  Lincoln v. Sunn, 807 F.2d at 813.

16       Movant has failed to establish that trial or appellate counsels' performance was deficient in

17   this regard or that he suffered prejudice as a result of that performance.  Accordingly, this claim

18   too should be denied.

19                             Inevitable Discovery Issue

20       This issue has already been discussed.  See Ground Four, ante, and the discussion regarding

21   the law of the case doctrine.

22                        Testimony Inconsistent with Evidence

23       Movant complains "that officer testimony was very inconsistent with the evidence" as it

24   relates to the reason for the probation search, citing the evidentiary hearing transcript of March

25   2017, and that counsel failed to "attack" these inconsistencies.  (ECF No. 193 at 11.)

26       To the degree movant attempts to, yet again, challenge the Ninth Circuit's ruling on the

27   inevitable discovery doctrine, as previously explained, this court will not consider the claim as the

28   law of the case doctrine applies.

1    Notably too, the scope of the testimony to be given at the evidentiary hearing held in March

2    2017 was limited to the Ninth Circuit's specific remand directives.  (ECF Nos. 129 & 180.)

3    A review of the testimony given March 31, 2017, reveals defense counsel Kresta Daly cross-

4    examined both Officers Canepa and Saber.  (ECF No. 188 at 26-38, 39-40, 51-57.)  More

5    particularly, Daly questioned Canepa about how one runs a records check where a suspect does

6    not provide a name, how records checks are accomplished, and how Canepa learned from Sabra

7    that movant was on parole and subject to search.  (ECF No. 188 at 39-40.)  Daly questioned Sabra

8    about how he learned movant's name in order to conduct a records search; Sabra did not

9    specifically recall, but testified he believed movant provided his name while in the back of the

10   patrol car.  (ECF No. 188 at 51-57.)  The undersigned's review of the officer' trial testimony does

11   not reveal any deficiency on the part of defense counsel.  (See ECF No. 122 [Canepa testimony]

12   & ECF No. 105 [Canepa & Sabra testimony].)

13   Because the Ninth Circuit Court of Appeals found the search to be constitutional following

14   remand, movant cannot establish prejudice.  The circumstances surrounding the records check in

15   relation to the search cannot serve to undo the Ninth Circuit's holding that the search of Evans'

16   apartment was constitutional as a result of the inevitable discovery doctrine.

17   Here, there has been no "fundamental defect which inherently result[ed] in a complete

18   miscarriage of justice …."  Davis, 476 U.S. at 346.  This claim too should be denied.

19                    **Ground Seven: Ineffective Assistance of Counsel**

20   In ground seven, his final argument, movant asserts (1) his attorney should have argued to the

21   jury that had he and Evans been arrested the "dynamics of the case" would have changed the

22   outcome of the case as both would have denied knowledge of the drugs, revealing Evans' lies and

23   movant's position as the "fall guy" and (2) his attorney's failure to object to Nehring's testimony

24   or to retain a defense expert on text messaging amounts to ineffective assistance of counsel.

25   (ECF No. 193 at 12.)

26                              Had Evans Been Arrested

27   This issue has already been addressed.  See Ground Four, ante.

28

1 <u>Defense Expert Should Have Been Retained</u>

2     Movant complains defense counsel was ineffective for failing to retain a "real text messaging

3 expert," because Agent Nehring's testimony on the subject of the text messages was "a total lie."

4 (ECF No. 193 at 12.)

5     As noted elsewhere in these findings, the defense strategy involved challenging the

6 assumption the Samsung cell phone found in Evans' apartment even belonged to movant.  And

7 therefore, by extension, challenging the content or meaning of text messages found on the cell

8 phone was incompatible with or harmful to trial strategy.  <u>Strickland</u>, 466 U.S. at 688-89.

9     In any event, to succeed on a claim of ineffective assistance of counsel based upon a failure to

10 investigate or call a witness, movant must identify the witness in question, and state with

11 specificity what that witness would have testified to, as well as how the witness' testimony might

12 have altered the outcome of the trial.  <u>Alcala v. Woodford</u>, 334 F.3d 862, 872-73 (9th Cir. 2003).

13 Movant must show that the witness in question was actually available and willing to testify.  <u>Id.</u> at

14 872-73.  Generally, this requires submission of affidavits from the witness himself.  <u>Dows v.</u>

15 <u>Wood</u>, 211 F.3d 480, 486 (9th Cir. 2000); <u>see also</u> <u>Bragg v. Galaza</u>, 242 F.3d 1082, 1088 (9th

16 Cir.), as amended by 253 F.3d 1150 (9th Cir. 2001) (mere speculation of possible helpful

17 information from potential witnesses is not sufficient to show ineffective assistance of counsel).

18     Here, movant does not identify the "text messaging" expert, provide any declarations or

19 affidavits from the expert, or state what specific evidence the expert would have provided had one

20 been hired.  Further, movant does not demonstrate that the outcome of the trial would have been

21 different had a text messaging expert been hired.  <u>Strickland</u>, 466 U.S. at 694.  Here, again, there

22 has been no "fundamental defect which inherently result[ed] in a complete miscarriage of justice

23 …."  <u>Davis</u>, 476 U.S. at 346.  Thus, the undersigned recommends movant's claim as asserted in

24 Ground Seven be denied.

25         **Conclusion**

26     Following careful review of the record, the undersigned recommends each of movant's claims

27 be denied.  Simply put, no "fundamental defect which inherently result[ed] in a complete

28 miscarriage of justice …" occurred.  <u>Davis v. United States</u>, 417 U.S. at 346.  Accordingly,

1    movant's motion should be denied in its entirety.

2         IT IS HEREBY RECOMMENDED that:

3         1.  Movant's August 27, 2018 motion to vacate, set aside, or correct his sentence

4              pursuant to 28 U.S.C. § 2255 be denied (ECF No. 193);

5         2.  Movant's motion to amend the traverse be denied (ECF No. 250); and

6         3.  The Clerk of the Court be directed to close the companion civil case No. 2:18-cv-

7    02353 MCE KJN.

8         These findings and recommendations are submitted to the United States District Judge

9    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

10   after being served with these findings and recommendations, any party may file written

11   objections with the court and serve a copy on all parties.  Such a document should be captioned

12   "Objections to Magistrate Judge's Findings and Recommendations."  If movant files objections,

13   he shall also address whether a certificate of appealability should issue and, if so, why and as to

14   which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

15   applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

16   § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after

17   service of the objections.  The parties are advised that failure to file objections within the

18   specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

19   F.2d 1153 (9th Cir. 1991).

20   Dated:  November 2, 2020

21

22                                    KENDALL J. NEWMAN
                                      UNITED STATES MAGISTRATE JUDGE
23

24

25

26

27

28

                                    29